The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence as a whole, the undersigned reach different facts and conclusions from those reached by the deputy commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their own findings of fact, conclusions of law, and ultimate award. Accordingly, the January 7, 1997 opinion and award by the deputy commissioner is HEREBY VACATED.
The Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. The Travelers Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage is as set forth on the Form 22 (wage chart).
5. Plaintiff is claiming an injury by accident or a specific traumatic incident which occurred on February 8, 1995, resulting in an injury to his back. The defendant-employer has denied liability, and the issue to be determined by the Commission is whether plaintiff, in fact, suffered from an injury by accident or a specific traumatic incident as he asserts.
 **********
Based on the competent, credible, and convincing evidence of record, the undersigned make the following
 FINDINGS OF FACT
1. On February 8, 1995, plaintiff was employed by defendant-employer. On that morning, plaintiff rode to work with his father, clocked in, and went about his usual duties as a maintenance technician. While installing conduit pipe to portions of the furniture production line, plaintiff was required to use an electric drill to drill into approximately 1/2 inch steel casings. About mid-morning, he was drilling overhead, in a standing position, bent at approximately a 75 degree angle. As he applied his weight drilling in this position, he felt a "twinge" or mild sting in his lower back.
2. After lunch, plaintiff continued drilling, but was required to lie on his side and drill upwards at a 90 degree angle into a control box. As he bore into the control box, broke through the steel and pulled back on the drill, he felt a shooting pain through his lower back and leg. At that point, he could not move and had to be lifted from the floor and assisted to his father's car. Because of his pain, he could not sit in the front seat of the car and had to be helped into the back seat where he could lie on his side.
3. Shortly after arriving home on the afternoon of February 8th, the plaintiff was transported to his chiropractor, Richard Brown, in the back of a Broncho. As Dr. Brown stated, plaintiff had had an earlier back injury in 1991 for which he had received chiropractic treatment. Between 1991 and February 8, 1995, subsequent chiropractic care had consisted of five or six visits in 1993 and one in 1994. Between 1991 and February 8, 1995, plaintiff had not lost any time from work because of back difficulties. When the plaintiff arrived at Dr. Brown's office, he needed assistance to get out of the vehicle and into the building. He was in excruciating pain and could not support himself on both feet. His right knee was cocked, and he was walking on his toes and was bent to the left at the waist.
4. Dr. Brown's office notes reflected that plaintiff's onset of injury was on February 7, 1995, as well as other seeming inconsistencies in details of the events. However, plaintiff's testimony as to the sequence of events as well as Dr. Brown's deposition testimony, which admitted the probable lack of accuracy in the office notes, and the doctor's subsequent testimony as to plaintiff's condition are accepted as more credible and convincing. Further, plaintiff had several credible and convincing corroborating witnesses to support his history of the onset of his back injury by specific traumatic incident on February 8, 1995.
5. After seeing the plaintiff for a period of time, Dr. Brown sent the plaintiff to a Durham neurosurgeon, Dr. Robert Price, who eventually performed surgery on the plaintiff on April 3, 1995, which confirmed the cause of plaintiff's pain to be large subligamentous ruptured disc at the L4-5 level. Both Dr. Price and Dr. Brown opined that the events of February 8, 1995 more probably than not resulted in the plaintiff's injury. Any contrary documentation in the medical records of Dr. Price is not accepted as credible or convincing, as the accuracy again is in question due to the history being taken by a physician assistant. Plaintiff's subsequent testimony as to how and when his injury occurred, again is accepted as more credible and convincing once the degree of plaintiff's injury was discovered in surgery and testified to by the medical experts in later depositions.
6. Following plaintiff's surgery, Dr. Price released him to return to work on May 21, 1996, with a 15% permanent partial disability to his back. Dr. Price's note of that date indicated that plaintiff was released to return to normal work activities.
7. Plaintiff was unable to work in his same or any other employment due to his compensable back injury from a period of February 8, 1995, until July 10, 1995, when he was able to return to his regular job and at which he had continued to work up until the date of the initial hearing.
8. Plaintiff, at the time of the initial injury had an average weekly wage of $568.50, yielding a weekly compensation rate of the maximum for the year 1995, that being $478.00.
The foregoing findings of fact and stipulations engender the following
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable specific traumatic incident to his back on February 8, 1995. G.S. § 97-2(6).
2. As a result of this compensable injury, plaintiff is entitled to temporary total disability compensation in the amount of $478.00 per week for the period of time from February 8, 1995 through July 10, 1995, when he was able to return to his regular job following his doctor's release at maximum medical improvement. G.S. § 97-29. This amount, as having accrued, shall be paid in a lump sum subject to a reasonable attorney's fee.
3. As plaintiff has returned to his former employment, his more favorable election of remedies will be for the 15% permanent partial disability to his back, and he is entitled to said amount, subject to a reasonable attorney's fee.
G.S. § 97-31(23).
4. Plaintiff is entitled to have all medical bills and treatment associated with this injury to be paid, once bills for the same have been submitted through the Commission or subject to Commission rules for approval.
The foregoing findings of fact and conclusions of law engender the following
 AWARD
1. Defendants shall pay to the plaintiff temporary total disability in the amount of $478.00 per week for the period of time from February 8, 1995 through July 10, 1995. This amount, as having accrued, shall be paid in a lump sum subject to a reasonable attorney's fee provided below.
2. Defendants shall further pay to plaintiff the 15% permanent partial disability to his back, subject to the reasonable attorney's fee provided below.
3. Defendants shall pay for all medical bills and treatment associated with plaintiff's compensable back injury, once bills for the same have been submitted through the Commission or subject to Commission rules for approval.
4. Plaintiff's counsel is entitled to a reasonable attorney's fee in the amount of twenty-five percent of the amount awarded Plaintiff. Said amounts shall be deducted and paid directly to Plaintiff's counsel.
5. Defendants shall bear the costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This ______________ day of __________________, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws